Last case this morning is City of Virginia v. Taylor. That's case number 4-100247. For the appellant we have William Knuppel and for the appellee, Luke Thomas. Is it Knuppel or Knuppel? Knuppel. Should have known that. I apologize. Okay, Mr. Knuppel. Thank you. I'm going to please the court and counsel. I'm going to leave your cutout here that says you're familiar with the facts of the case, so I'm going to bypass some of the facts and just give you a perspective on this case from my client's viewpoint and my viewpoint and work that into why I think that we should prevail on these appeals. My client gets served with a document saying complaint, saying that the City of Virginia, which is a small community of 1,660 people in Cass County, Illinois, is going to use his private road and they're going to enjoin him from interfering with their use of his road. And he brings me the complaint and said, can they do that? Well, it doesn't seem right to me, but I'll take a look and let you know. So I looked at it, did some work on it, and came up with the conclusion that I don't think they can do that. I think they could condemn your road, I think they could ask for just compensation and use your road, but in the state that they did it, no, I don't think they can do that. But let's get some information and see why they would want to do that. So we took what I thought was a streamlined discovery, the Freedom of Information Act. It turned out not to be. But we asked for some materials, and I must say that it reminded me of the movie where they gave you 35 boxes and there was one document in it that was important. We got boxes of documents. We wanted plans and specifications on these well sites. And we got plans on a water treatment plant eight miles away, we got lots of things. And we looked through those things and found they had a $19 million project to furnish water in a lot of places, and that they had bought five well sites adjacent to my client's road for $108,900 an acre, and they wanted to use his road for free. I said I think somewhere in here they must not have spent this much money and planned this project without something to assure themselves that they can get to their well sites. So I think it's out there. We just need to keep looking for it. In the meantime, the injunction case moved along, and we had a couple hearings on it, and I filed a motion for summary judgment. Judge McMillan gave us time to brief the case, and Mr. Taylor, me on his behalf, filed a brief, and we thought we were going to have a hearing on that. And then the city filed a motion there to file an amended complaint. I objected to that, and subsequently they dismissed their case voluntarily. So they no longer sought that remedy. In the meantime, the Freedom of Information Act, we had never gotten anything that we asked for. Well, we had gotten a lot of things we asked for. We had never gotten the one thing we thought was out there, and that is what do they have to assure themselves that they can get to their own well sites? Well, after the injunction case was dismissed, and the new Freedom of Information Act came into effect after January 1, 2010, there was a little more teeth in the act, we made some new requests. And the new requests were, by new I mean we made some more requests, but they were the same as the old requests. Suddenly, we get a document that had been in existence from 2006, which was an agreement with the people from whom they had purchased the well sites that said they can use their land to get there. So when we look at the complaint that Mr. Taylor brought to me to begin with, it says, Taylor's Road provides the only means for plaintiffs to reach its land to force their well sites. That obviously was not true. It says they were without an adequate remedy at law. Not true. So we thought we should be entitled to fees. We had to defend that case, and we asked for fees, and we had like a five-minute hearing, and Judge McMillan denied that. So we're here on that question. In the Freedom of Information Act case, we had gone through several months of asking for documents, and the one smoking gun document that we wanted all along, under plans and specifications, we just didn't get it until the other case was voluntarily dismissed. Had we gotten that up front, the Freedom of Information Act request would have ceased. That's all we wanted. How were you really going to get to your well sites? You must have a plan. You're spending a lot of money. There's got to be a way. And it turns out there was a way. So they have gone ahead with their project. The Freedom of Information request included language to that effect? Any documentation? What it said was plans and specifications. I didn't know how else to put it. Had I known there was a stock agreement, I would have said we want the stock agreement. We didn't know there was one. Plans and specifications as to what? As to how you're going to access your well sites. So you didn't use the term access. I believe so. I don't have that in front of me here. But the gist all the way along was we didn't want their documents, but for the fact they had filed the case against Taylor. The only reason we got in the Freedom of Information Act mode was because that case was pending. So we obviously were trying to find what was out there that would assure them that they could access their own well sites. There had to be something. And we didn't really get it until after the other case was voluntarily dismissed. So we felt we were entitled to fees on that case also, and that's why we're here. So I think the bottom line in both of these cases is that if one judge had heard both of these cases, when I wrote this brief and reviewed the briefs, I really believe we would have won both of these cases in the trial court. But Judge McMillan probably didn't understand what we had been doing over here on the other side with the Freedom of Information Act case. Judge Butler didn't understand why we were doing it because he didn't have the injunction case. Had one judge had both of them, I think they would have seen the reason why we were where we were. So I think now that they're consolidated, you can put the two together and the timeline together and the reasoning as to why we have made the requests and why we're somewhat frustrated when we find out that in 2006 they had a written agreement giving them the right to use the neighbor's land and not Mr. Taylor's road, why we're entitled to fees. I think our fees are quite nominal in view of everything. I really thought the Freedom of Information Act was to more or less punish the department for not furnishing the documents. I don't think you're ever going to punish the city of Virginia when they have a $19 million project with several hundred thousand allocated to attorney fees by making them pay. But I do think you might at least send a message that when someone wants a document, they should send it. So we're here seeking fees in both of those cases for the reasons that I've outlined and I'd be happy to answer any questions that you have. Seeing none, thank you, but you will have rebuttal. Thank you. Mr. Thomas. Good morning, may it please the court opposing counsel. We believe that there are two issues on appeal that have been raised by the appellant in his brief. First off, whether or not sanctions pursuant to Supreme Court Rule 137 are warranted based on the record and the facts before the trial for a judge, and that would be Judge McMillan in Case 09-MR22. And the second issue is whether the city in fact violated the Freedom of Information Act by withholding a document showing the city had an agreement with Taylor's adjoining landowners for this purpose, the stock agreement, and therefore forms the basis under the then existing Freedom of Information Act for attorney's fees. In both cases, we believe, and we've set forth in our brief, the starting point to be the appropriate standard of review, which we believe is abuse of discretion. We've outlined why we believe that in our brief. The appellant's urging this court to believe his Freedom of Information Act was used merely for discovery purposes, and again, restated that today as a streamline for discovery, just to simply protect his interest in the road. And looking in that case, he also specifically filed a counterclaim asking the court to declare that the city of Virginia could not use the well sites that they had purchased to furnish water to its residents and the persons under that project. We believe that makes it readily apparent that Mr. Taylor's motive was simply to use the Freedom of Information Act to streamline discovery and... Does that matter to us as far as reaching a decision in this case? I believe it does because also in looking at the actual request, and I think, Justice Turner, you asked counsel if there was a specific request addressing the access to those well sites. I don't believe you'll find the record has any such request. When we're talking about plans and specifications, it refers to the water project. That, in turn, is why Mr. Taylor was provided volumes of documents, because it was fashioned in the sense that they wanted to know what was going on with the water project. We provided copies of the plans for the plan itself, the access, or the water lines, everything that we had we provided to them. It wasn't an attempt to have a smoke and mirrors and hide something within those documents. The requests each time were fashioned in that they wanted to know everything that we had submitted to EPA, the project itself, and in doing that it was very burdensome to come up with it. When we submitted everything that they asked for to EPA, that was provided to them. Now, had there been a specific request as to the access to the roads or the access to the well sites, that could have been furnished as well, and counsel, and I don't know if this is a record, but it's referencing that after the case was dismissed there was a specific request and magically the stock agreement appeared. But that request was specifically how do you intend to access the roads and reference the stock agreement. So we believe it's somewhat disingenuous to contend that that was the only issue before the trial court. An appellant, Mr. Taylor, acknowledges this when he states in his brief it's hard to know what's out there, or it's hard to know what to ask for when you don't know what's out there. I think that's setting a dangerous precedent if you leave the responding party to a Freedom of Information Act request to guess what they're wanting. That's why we provided everything that we felt was within the guidelines of their request. Likewise, going forward, counsel summarizes the arguments that were made before the trial court on the 137 sanction request. The court order, which was attached to the brief, does outline the court heard arguments of counsel and was familiar with the pleadings. But there was more to it. Judge McMillan did go on the record to state her reasoning and set forth why she believed these sanctions weren't warranted. And we've touched on those reasons, I believe, adequately in our brief. But this wasn't a simple issue before the trial court that it was not blatantly obvious that that statute, the way it was attempting to be utilized by the city, was improper out of the gate. If so, and if it were that obvious as we expressed in our brief, we believe counsel would have promptly filed a motion to dismiss the complaint saying it was deficient. Because we'll admit that it does not set forth the allegations for an imminent domain claim. Mr. Newpol says in his brief there are two questions that the city needs to address. The first one is why did the city file the injunction against Tater when it had a written agreement with the stocks to use the land for access? What's your response to that question? My response is that the written agreement with the stocks, we don't believe it was the intent of the parties under that agreement to ever address this physical road, the need to have a road for construction of these well sites, which would have required heavy equipment. We don't believe it was contemplated in fairness to the stocks and to the city that we anticipated taking a portion of their land to construct a road. We thought that made it impractical from a cost standpoint and a timing standpoint to get this equipment down there and that it was logical that there was an existing road there which the city could have used on a temporary basis to construct the wells. His second question is why did the city not disclose the agreement with the stocks until after the injunction case was dismissed? Because it was not requested. That was a straightforward request after the case was dismissed and it was provided. That's why it was not provided. And to answer Mr. Neuquel's question in his brief further, subsequent to that brief, the city of Virginia did renegotiate with the stocks and has had to purchase additional lands outside of that agreement to construct a road and is in the process of analyzing whether it's cost feasible for them to construct the road. So that I think further buttresses their argument that that was never contemplated under that 2006 agreement that they were going to be constructing a road. The fact of the matter is that the well sites were, or the preliminary heavy construction aspect of the well sites was accomplished during a time period in the wintertime when the ground was frozen and the stocks gave them verbal permission to enter upon their farmland to get the heavy equipment there. That was not the case in February when we anticipated a fall and not going forward with the project to be able to use heavy equipment on obviously farmland that would be utilized within a month or two for crops and so forth. As far as the Freedom of Information Act request is also what evidence was before the trial court and I think Judge Butler's order summarizes the particulars of what was before the trial court at that time, but there was no evidence admitted to what the requests were and what the city's responses were. Again, the appellant is arguing in his brief that the city did not file an answer. We do believe that that issue also was fully vetted before Judge Butler because we had several status hearings. We were attempting to get into appellants' hands what they were requesting. We did this on several occasions and there were responses to when Mr. Newpol would sign an affidavit saying what he believed was insufficient. I in turn would then file a response saying why we believed it was sufficient. So it wasn't the case where the complaint or the appellant was taken by surprise at trial. Notably at trial, while the appellant said yes, those affidavits are accurate, when specifically asked what did you not receive that you requested, he went on to state that it was aspects regarding the engineering and the testing that was done. He just couldn't comprehend how there was going to be sufficient water. I think that in turn goes back to the Freedom of Information Act request being more than just a discovery purpose to protect the road, but overall his objection to the wells and the water project being in the vicinity of its farming operation. Thank you. Thank you, counsel. Mr. Newpol, rebuttal. Just a couple of things I can see here. First of all, when the injunction case was pending, I don't think that you had to guess what it was we were trying to find out. In other words, why would you buy well sites that are so many feet apart and then expect to use the neighbor's road? Surely you wouldn't embark on a project like that without some way of getting there. So every time that we asked that question, the only reason that discovery was actually begun was to find out why they would start a project and not have it nailed down. They had to have it nailed down somewhere, or they would not have paid that much money for the well sites. So I don't think the city wanted to give us that agreement because it was just easier not to once they had filed the suit. That's the only explanation I can come up with. It was logical because of what was pending, and every time we had our case management conferences, we discussed the other case. If we had that before one judge, I think it would have been a lot better, but that didn't turn out that way. The other thing is, it appears from Mr. Thomas' argument, that they built this whole project around their presumption that they could just use heavy equipment on my client's road in a muddy area and do what they wanted to do without filing any sort of a lawsuit for just compensation, which is the even more reason why the case that was filed against him is frivolous. They did not file it as a condemnation case. They never mentioned just compensation. They just merely wanted to enjoin him from interfering with their use, any way they wanted, of his road. So I think it's obviously frivolous, and the agreement that we got later, when you put it together with what they had filed, shows that they have no basis in fact for asking for that relief. Did anybody ever talk to the tailors before suits were filed about use of the road? Not that I'm aware of, but I don't know. Thank you. Thank you. The case is submitted, and the court will stand in recess.